IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Wanda E. Stamper, | ) |
| | ) |
| Plaintiff, | )  CA No. 9:06-256-HMH-GCK |
| | ) |
| vs. | )  **OPINION & ORDER** |
| | ) |
| Linda S. McMahon,¹ Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge George C. Kosko, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.² Wanda E. Stamper ("Stamper") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act. In his Report and Recommendation, Magistrate Judge Kosko recommends affirming the Commissioner's decision. Stamper

---

¹ On January 20, 2007, Linda S. McMahon ("McMahon") became the Acting Commissioner of Social Security. Therefore, McMahon is substituted for Jo Anne B. Barnhart pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

² The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1) (West Supp. 2006).

1

objects to the Report and Recommendation. For the reasons stated below, the court adopts the Magistrate Judge's Report and Recommendation and affirms the Commissioner's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 22-25), and summarized as follows. At the time of the ALJ's decision on November 14, 2005, Stamper was a fifty-six-year-old woman with a sixth-grade education. (Id. at 22.) Her past relevant employment includes a position as a janitor. (Id. at 22, 110.) Stamper alleges that she has been disabled since February 18, 2003, due to difficulty with prolonged standing, walking, or sitting. (Id.)

On April 9, 2003, Stamper filed an application for SSI. (Id. at 274.) On May 12, 2003, Stamper filed an application for DIB. (R. at 264.) The applications were denied initially and on reconsideration. (Id. at 38-45.) After a hearing held February 14, 2005, the ALJ issued a decision dated May 3, 2005, denying benefits. After review, the Appeals Council vacated the decision, remanding it to the ALJ for a new hearing. On November 14, 2005, after a hearing on August 25, 2005, the ALJ found that Stamper was not disabled because her "medically determinable impairments [did] not meet or medically equal one of the listed impairments" pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Id. at 27.) Additionally, the ALJ found that the claimant could return to her past relevant work as a janitor. (Id. at 27.) On January 5, 2006, the decision of the ALJ became the final decision of the Commissioner. Stamper filed the instant action on January 24, 2006.

## II. REPORT AND RECOMMENDATION

In her brief to the Magistrate Judge, Stamper argued that the ALJ erred in the following ways: (1) the ALJ failed to consider or discuss any of the psychiatric treatment received by Stamper; (2) the ALJ improperly evaluated the opinions of Stamper's treating physicians under the treating physician rule; (3) the ALJ failed to correctly assess the severity of Stamper's pain and other symptoms; (4) the ALJ erred by determining Stamper could perform her past relevant work without engaging in a function-by-function evaluation of her impairments and past relevant work as required by SSR's 96-8p and 96-9p; (5) the ALJ erred by failing to define what he meant by a "low stress" environment; and (6) the ALJ failed to discuss the contradiction between Stamper's past relevant work and the skill requirements set out in the Dictionary of Occupational Titles, in violation of SSR 00-4p.

The Magistrate Judge found that the ALJ's decision was supported by substantial evidence and that the ALJ had not erred on any of Stamper's six grounds. Accordingly, the Magistrate Judge recommended affirming the Commissioner's decision to deny Stamper benefits. (Report and Recommendation 34.)

## III. DISCUSSION OF THE LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). In other words, the court "must uphold the factual findings of the [Commissioner only] if they are supported by substantial

3

evidence *and* were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (emphasis added).

"A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). "Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (internal quotation omitted). Hence, if the Commissioner's finding is supported by substantial evidence, the court should uphold the Commissioner's finding even if the court disagrees with it. See id.

### B. Objections

Stamper filed three objections to the Magistrate Judge's Report. First, Stamper objects to the Magistrate Judge's conclusion that the ALJ properly applied the treating physician rule. (Objections 1.) Second, Stamper objects to the Magistrate Judge's finding that the ALJ properly evaluated Stamper's psychiatric condition. (Id.) Third, Stamper objects to the Magistrate Judge's finding that the ALJ did not err by failing to define what he meant by a "low stress" environment in his residual functional capacity assessment. (Id.)

#### 1. Treating Physician Rule

The ALJ must give controlling weight to a treating physician's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.927(d)-(e)(1) (2006). Furthermore, Social Security Ruling ("SSR") 96-2p states that "[a] finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected." 1996 WL

4

374188, at *1 (1996). "It may still be entitled to deference and be adopted by the adjudicator." (Id.) When considering the deference accorded to a treating physician's opinion, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1527(d) (2006): (1) "the length of the treatment relationship and the frequency of examination," (2) the "[n]ature and extent of the treatment relationship," (3) the supportability of the treating physician's opinion, (4) the consistency of the opinion with the record as a whole, (5) whether the treating physician is a specialist in the area in which he is offering an opinion, and (6) any other relevant factors.

Stamper's treating physician, Dr. Gardner D. Young ("Dr. Young"), diagnosed Stamper with osteoarthritis and degenerative joint disease of the lumbar spine with bilateral sciatic neuralgia. (R. at 152.) Dr. Young opined that Stamper had less than a sedentary residual functional capacity ("RFC"). (R. at 198-99.) The ALJ discounted the Dr. Young's opinion for the following reasons: (1) Dr. Young's opinion was not supported by his own medical records, including clinical findings and test results, and (2) Dr. Young's opinion was based primarily on Stamper's subjective complaints of pain. (Id. at 25.) The court finds that the ALJ did not err by discounting Dr. Young's opinion regarding Stamper's RFC.

"Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at *1 (1996). The ALJ properly found that Dr. Young's opinion supporting Stamper's complaints of pain was not well-supported by either clinical or diagnostic techniques. (R. at 25.) The ALJ relied in part upon a CT scan made of Stamper's spine on June 28, 2002, and an x-ray made of Stamper's spine on July 29, 2003. (Id.

5

at 154, 218.) Both diagnostic tests revealed that Stamper's spine was normal. Additionally, the ALJ correctly noted that Dr. Young's medical records for Stamper showed minimal objective clinical findings, and that Dr. Young's observations and opinions were primarily based on Stamper's subjective complaints. (Id. at 25, 156-63, 200-05, 217, 221-23); see Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (upholding an ALJ's decision to give lesser weight to a treating physician's opinion in part because the treating physician's "diagnosis was based largely upon the claimant's self-reported symptoms" and the claimant's "laboratory tests . . . were within normal parameters"). Further, as described above, the ALJ gave "specific reasons for the weight given to the treating source's medical opinion" which were "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996).

Once the ALJ determined that Dr. Young's opinion was not well-supported by clinical or diagnostic evidence, the ALJ had "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178. The ALJ correctly noted that Dr. Young's opinion was inconsistent with his own recent treatment notes dated December 28, 2004, through July 29, 2005, which indicated that Stamper's neurological examination was normal and she demonstrated full motor strength, normal sensory examination, and strong ("2+ /4"), symmetrical deep tendon reflexes. (R. at 24, 219-221); see Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (upholding an ALJ's rejection of a treating physician's opinion because it was inconsistent with the physician's treatment notes). Additionally, Dr. Young's opinion was inconsistent with Stamper's description of her daily activities, which was "representative of a fairly active and varied lifestyle." (R. at 25, 320-21.) Finally, Dr. Young's

6

opinion was inconsistent with the opinion of Dr. Charles C. Jones ("Dr. Jones"), a state agency medical consultant who opined that Stamper could stand or walk for six hours of an eight-hour day, carry twenty-five pounds frequently, and sit for six hours in an eight-hour work day. (Id. at 23-24, 168-197.) Thus, the ALJ properly considered the lack of clinical and diagnostic support for Dr. Young's opinion and the inconsistency of his opinion with other evidence pursuant to 20 C.F.R. § 404.1527(d) (2006). In light of the ALJ's finding that Dr. Young's opinion was not well-supported by clinical or diagnostic evidence, the court finds no error in the ALJ's rejection of Dr. Young's opinion in favor of conflicting evidence. Based on the foregoing, the Magistrate Judge correctly found that the ALJ properly applied the treating physician rule in rejecting Dr. Young's opinion of disability.

### 2. Stamper's Psychiatric Condition

Secondly, Stamper objects to the Magistrate Judge's conclusion that the ALJ did not improperly evaluate Stamper's psychiatric condition. (Objections 1). In support of her objection, Stamper acknowledges that the ALJ "briefly discussed [Stamper's] psychiatric treatment," but argues that "[psychiatric] evidence must be analyzed in more than simply conclusory fashion." (Id. 5.)

Contrary to Stamper's assertion, the ALJ did not analyze Stamper's psychiatric condition in a merely conclusory fashion. In his decision, the ALJ noted that Stamper had experienced "depressive symptoms since the 1960's, and that she had been hospitalized in 1968 and 1989." (R. at 23.) Additionally, the ALJ noted Dr. Young's diagnosis of "irritable bipolar depression." (Id. at 24.) The ALJ heard Stamper's testimony, as well as the testimony of Stamper's mother and sister, regarding Stamper's irritability and depression. (Id. at 24-25.) Finally, the ALJ

considered the opinion of the psychiatric consultative examiner, Dr. Thomas V. Martin ("Dr. Martin"), and the opinion of a state agency psychological consultant, Dr. Samuel W. Goots ("Dr. Goots"), both of whom diagnosed Stamper with major depressive disorder and pain disorder. (Id. at 23, 164-67, 185, 188.)  The ALJ considered that Dr. Martin gave Stamper a rating of 50 on the Global Assessment of Functioning ("GAF") Scale, which rates psychological functioning on a scale of zero to one hundred.  See Kornecky v. Comm'r of Soc. Sec., No. 04-2171, 2006 WL 305648, at *5 n.7 (6th Cir. Feb. 9, 2006) (unpublished) (citing AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed., Text Revision 2000).

Along with the above evidence, however, the ALJ correctly noted that Stamper's medical records indicated that she did very well on her psychotrophic medications.  (R. at 24, 217); see Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").  Additionally, the ALJ considered that Stamper had not sought treatment from a mental health professional during the relevant time period of her claimed disability and correctly described the GAF as an assessment that is not a conclusive diagnosis.  (R. at 25, 164); see Kornecky, 2006 WL 305648, at *5 n.7 (describing GAF as "a clinician's subjective rating . . . of an individual's overall psychological functioning" rather than "raw medical data"); see also Quaite v. Barnhart, 312 F. Supp. 2d 1195, 1200 (E.D. Mo. 2004) (finding that a GAF "score, standing alone, does not establish an impairment seriously interfering with plaintiff's ability to perform basic work activities").  Further, the ALJ allowed for Stamper's claimed mental impairments in the RFC by limiting her to "routine, repetitive tasks involving simple 1-2 step instructions in a low stress environment with no public

contact." (R. at 25-26.) Based on the foregoing, the ALJ properly considered the evidence relating to Stamper's mental limitations, and substantial evidence supported his finding that Stamper suffered from "moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistance, or pace." (Id. at 26.) Therefore, the Magistrate Judge properly found that the ALJ appropriately evaluated Stamper's psychiatric condition.

### 3.  Definition of "Low Stress" Environment

Third, Stamper objects to the Magistrate Judge's determination that the ALJ did not err by failing to define "low stress" in Stamper's residual functional capacity ("RFC"). SSR 85-15 required the ALJ to include "[a]ny impairment-related limitations created by an individual's response to demands of work . . . in the RFC assessment." 1985 WL 56857, at *6 (1985). Stamper argues that the ALJ's failure to define what is meant by a low stress environment violates SSR 96-8p, which requires the ALJ to discuss the individual's ability to perform "sustained work activities in an ordinary work setting on a regular and continuing basis." 1996 WL 374184, at *2 (1996).

The ALJ found that Stamper had the RFC "to perform work with restrictions requiring lifting, carrying, and/or handling of 50 pounds occasionally, 25 pounds frequently and restricted to routine, repetitive tasks involving 1-2 step instructions in a low stress environment with no public contact." (R. at 26.) The ALJ did not explicitly define "low stress environment" in his decision. However, in response to the ALJ's request for clarification, the vocational expert ("VE") testified that a "low stress job" would be characterized by a job that does not require supervision over a significant amount of people, maintaining a dangerous or hazardous type of

work, or significant independent problem solving, and which does not involve anything above a modest degree of supervision. (Id. at 337.) The VE characterized Stamper's past jobs as a janitor as "low stress." (Id. at 336.)

The court finds that the ALJ's description of Stamper's RFC was sufficient. The ALJ included a stress limitation in Stamper's RFC determination pursuant to SSR 85-15, and relied upon the VE's testimony, which delineated the specific characteristics of a "low stress [working] environment," in determining that Stamper had the capacity to return to her past relevant work as a janitor. See Chavis v. Shalala, 1994 WL 319163, at *1-3 (4th Cir. Feb. 8, 1994) (unpublished) (finding an RFC and corresponding hypothetical question adequate when the ALJ found that the claimant could "perform simple, routine, repetitive tasks in a low stress environment"); see also Dowty v. Barnhart, 2003 WL 21509142, at *1-3 (10th Cir. July 2, 2003) (unpublished) (finding a claimant's RFC and corresponding hypothetical question adequately summarized the claimant's limitations when the ALJ found that the claimant had the RFC "to perform a wide range of medium work, reduced by her inability to understand, remember, and carry out detailed or complex instructions, to tolerate more than superficial contact with the general public, or to tolerate work that is stressful").

Further, the ALJ accounted for Stamper's mental limitations by explicitly limiting Stamper to routine, repetitive tasks involving 1-2 step instructions and no public contact, in addition to the general limitation to a low-stress environment. (R. at 26.) These limitations go directly to Stamper's mental impairments, including her ability to endure stress. To the extent Stamper argues that her RFC should have included a limitation that she could not tolerate even indirect supervision, the ALJ is only required to include limitations which the ALJ finds exist.

10

See Mickles v. Shalala, 29 F.3d 918, 929 n.7 (4th Cir. 1994); Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999). Stamper does not allege that any evidence supported a finding that she could not tolerate even indirect supervision. Therefore, the Magistrate Judge properly found that the ALJ did not err by failing to define a "low stress environment" in Stamper's RFC and his questions to the VE. Based on the foregoing, the court adopts Magistrate Judge Kosko's Report and Recommendation affirming the Commissioner's decision.

Therefore, it is

**ORDERED** that the Commissioner's decision to deny Stamper benefits is affirmed.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
February 7, 2007